Ura Bernard LEMON et al., United States of America, Bossier Citizenship Education Program, Inc. and Reverend E. D. Hooks, et al.

v.

BOSSIER PARISH SCHOOL BOARD et al.

Civ. A. No. 10687.

United States District Court, W. D. Louisiana, Shreveport Division.

March 29, 1977.

Arthur G. Thompson, Frank E. Brown, Jr., Shreveport, La., for plaintiffs.

Henry N. Brown, Jr., Shreveport, La., for defendants.

S. P. Davis, Shreveport, La., for intervenors.

## ORDER AND JUDGMENT

EDWIN F. HUNTER, Jr., Senior District Judge.

The desegregation plan under which the Board is presently operating was approved on January 20, 1970. The plan divided the Parish into six attendance zones, corresponding with the Parish's taxing districts. As to Attendance Zone 13, encompassing Bossier City, the plan provided for eight elementary school attendance zones, each with its own school. The zone created for Butler Elementary School included the isolated and compact neighborhood near the Butler School. It is bounded on the south by the Illinois Central Railroad and heavy industry; on the west and north by railroad tracks, industry and U. S. Highway 80; and on the east by the Louisiana & Arkansas Railroad. Street access is limited to two streets leading into the area from U. S. Hwy. 80 on the north and two streets leading into the area from Hamilton Road on the east. The school property itself, comprising approximately four acres, is surrounded by a highway chain-link fence.

In an effort to bring about the eventual desegregation of Butler, the Court, through the Board, established at Butler the city's only kindergarten, expressing a hope that white kindergarten students would remain at Butler for the elementary grades. In 1972 there was a total of 168 whites in the school (160 of these were in kindergarten). Over the next two years, with the inauguration of kindergarten programs at other elementary schools, the white enrollment in Butler's kindergarten disappeared. Only one white student has remained.

In 1973–74, in a move to further desegregate the city's elementary students, the Board re-zoned a portion of the Butler attendance zone located south of the Illinois Central Railroad tracks into the Central Parish Zone. As a result, approximately 80 of Butler's black students were transferred to Central Park that year. No other changes have occurred in the desegregation plan.

The United States filed a motion for supplemental relief, requesting an alternative method of student assignment which will effectively desegregate Bossier Parish's single remaining all-black school.

Citing a substantial interest in the fate of Butler Elementary School, the Bossier Citizenship Education Program, Inc., and the Rev. E. D. Hooks filed a motion to intervene. Permission to intervene was granted. At the request of these intervenors, this Court appointed a bi-racial committee to analyze the present student assignment plan regarding Butler. The recommendation of the Bi-racial Committee, as communicated to the Court, was to continue the current operation of Butler with its present attendance zone. The School Board agrees with this recommendation but added the further proviso that if this were not permissible, the only alternative was to close Butler and have its students reassigned to other schools. The United States now suggests that there are abundant non-racial educational reasons to close Butler and reassign its students. They therefore suggest that the School Board be given the alternative to either pair Butler or close it.

There are 18,385 students in the Bossier Parish School System. There remains this one all-black elementary school—kindergarten through Sixth Grade, with 158. Does the existence of this one isolated neighborhood (walk-in) school mark Bossier as a system that still practices segregation by law? *Swann v. Charlotte-Mecklenburg*, 402 U.S. 1, 24, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971); *Carr v. Montgomery Board of Education*, 377 F.Supp. 1123, 1133–34 (M.D.Ala., 1974), aff'd, 511 F.2d 1374 (5th Cir.), cert. denied, 423 U.S. 986, 96 S.Ct. 394, 46 L.Ed.2d 303; *Stout v. Jefferson County Board of Education*, 537 F.2d 800 (5th Cir. 1976).

▮ The issue is close and troubling. Pairing and the consequent busing which would be required would not, in my judg-

ment, effectively desegregate the school. The patrons of this school and the School Board desire to have this school continue under its present structure. Improvements have been and are being made in the facilities. Its faculty is fully integrated. This is a walk-in school. Should it be closed and these children bused? Equity requires that we balance the individual and collective interests. *Milliken v. Bradley*, 418 U.S. 717, at 738, 94 S.Ct. 3112, 41 L.Ed.2d 1069. The individual interest here is as personal and important as any in our society. It relates to the family and to the concern of parents for the welfare of these, their children of tender age. Families share this concern wholly without regard to race or economic status. We decline the suggestion that we order Butler closed. The burden of closure would fall not on the government or the School Board, but rather upon innocent children and their parents. *Austin Independent School District v. United States*, 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 603. These people, under present circumstances, are entitled to have this walk-in school maintained.

The unfortunate presence of this single one-race school, serving 158 students in a system serving more than 18,000, is to be deplored. But, it is primarily a result of demography. The system as a whole is desegregated and even these 158 students will be exposed to complete desegregation when they reach the Seventh Grade. Then, too, there is always the majority-to-minority transfer rule.

█ Nevertheless, in view of this one-race school, we conclude that the system must continue under the scrutiny of the Court. The School Board should give consideration of enriching and strengthening the curriculum to magnet levels in the Butler facilities.

We adopt the Bi-racial Committee's recommendation, and Butler, for the time being, will continue to operate as a K–6 elementary school.